hernandez-der French English  Durante Navarra Correspondent Good morning, Your Honor. Atmore Baggett for the appellant Ruben Hernandez-Hernandez. The charge against this defendant, in the indictment, is that he was entered and was found on March 4th, 2004. The preliminary instructions given by Judge Martone is that the charge against the defendant surrendders the case to the constituency. The evidence available to the defendant is that he entered and was found on March 4th, 2004. The final jury instructions given by Judge Martone was that the jury can only convict if the jury found that he entered and was found on March 4th, 2004. The form of the verdict was that the defendant was found guilty of reentry after deportation as charged in the indictment. That's excerpt page 95. The Rule 29 motion should have been granted because the jury found him guilty of reentry on March 4th, 2004, when the government had presented no evidence of reentry whatsoever. The fellow was deported back in 1995. He's got a series of petty offenses between 1995 and 2004, which is a period of nine years. It's very possible, probable even, that this defendant went back to Mexico and reentered several times in that nine-year period. We submit that the judge should have granted the Defense Rule 29 motion for acquittal simply because the jury was not presented with any evidence of when, how, where the defendant reentered the United States after being deported in 1995. I would briefly comment on the case cited by the government, Griffin v. United States. It's a 1991 case in the Supreme Court. There there was one charge of fraud conspiracy with two objects, namely that the individual defrauded two separate agencies, IRS and DEA, and one of those agencies didn't show up. The other did. But the instructions there were that the jury was allowed to convict if it found her to have participated in either one of the two objects of the conspiracy. Here the case was submitted to the jury on an all-or-nothing basis, that you must find that he entered and was found both on March 4, 2004. The jury instructions were quite different in those two cases. And here the indication by the form of the verdict is that they found him guilty of reentry. And the government presented, didn't even try to present any evidence of when, where, how or the circumstances or date or time of his reentry. And as I say, it's most probable there were many reentries. People in Mexico do that quite often. They go home to visit relatives for holidays, come back, and each one of those are separate crimes. I would also then like to pass on to my second argument, which is the question of whether he could be found in the United States on March 4, 2004. Your Honors, this case is different from all the precedents. I think it's a case of first impression where the discovery of the individual, his name and birth date, were entirely separate from the discovery of his status as a deported felon. You'll recall that he was identified in the sense that INS, then INS, had his name and date of birth and true name, I might add, not a false name, a true name, on March 4, 2004, when he entered into the INS office to seek a replacement for an LPR 551 form, which is called the green card, even though it's not green. They found there was no indication at that point in time that he was a deported felon. Quite to the contrary, the official, the officer of the official was a P. Wilson who issued a certification, I certify, based on all available information that the applicant is entitled to the immigration document for which the application has been made. That's excerpt page 83 and 85, and it's stamped or printed name of the official, P. Wilson, signature of the official, P. Wilson. So the indication is, the evidence is that he was not identified as a deported felon. His status or lack of status in the United States was not discovered for many months. We don't even know when. We know he was arrested when he was working in Walmart, where he had been working for four years, approximately, according to the pre-sentence report. He's got a pretty good employment history. But our position is that based on the cases of Hernandez, same name, Hernandez, and the one before it, Ruelas Araquin, when they talk about discovered and identified, what that the persona or his body, so to speak, or his date of birth, but the fact that he is a deported felon. That's what starts the statute of limitations clock ticking, or the calendar, better, ticking. If an immigration officer, let's say he passes someone on the street and, you know, the deported felon says, hello, Officer Smith, and three days later, Agent Smith says, you know, that's the guy I deported two years ago, everyone who's charged with this could claim that, you know, he was found in the United States just because he talked to some immigration person or had some contact with an immigration person in some way, shape, or form. Our point is the government did not prove that he was found on March 4, 2004, as charged simply because he was not, his status was not discovered until, we don't really know, but probably close to the time they arrested him at Walmart, which was two or three months later, not anywhere on or about March 4, 2004. I would also like to briefly mention my last argument, which is that under the Supreme the jury. The fact that was not submitted to this jury was whether the deportation was, quote, unquote, subsequent to an aggravated felony, so as to put him in B-2, as opposed to Section A. The matter of fact that was not submitted was the time relation between the deportation and the prior aggravated felony, and we agree that those facts do appear on the record. The jury found that he was deported on March, or that he was found March 4, 2004, even though we claim that's an error, and the fact of the date of the deport, of the aggravated felony is one of those things that appears on the piece of paper, the judgment and commitment. However, the jury is the conscience of the community. Every fact must be submitted to a jury, even though it couldn't be more obvious. In fact, this trial was, as Judge Martone describes re-entry trials, they're a long-form change of plea. There really isn't much to decide in the main case either. I mean, the guy sitting here next, I didn't try the case, but usually he's sitting there next to me and the agent shows deportation papers, and what else are you going to say? So the whole case is really just an exercise in futility, but the right to a jury trial is constitutional. It does not depend on the amount of prejudice. But the fact of conviction doesn't have to be proven by the date. No, it doesn't. So why isn't this? Not even the date. This is sort of like saying today is February 16th, tomorrow is February 17th. So you – your point is that you think the jury has to say that tomorrow is subsequent to today. Juries are the conscience of the community. They exercise independent judgments. They reach verdicts that we don't always understand, but that's the system. And they may decide, well, you know, this guy's had enough. Why should we aggravate his sentence? We're not going to do it. And they have no right to do that, but juries do that – do do that. And, you know, we sit back and try to figure out what the heck these folks have done, but that's the system. It's a constitutional right. It does not depend upon prejudice. It does not depend – there's no such thing as summary judgments or directed verdicts in criminal cases. And what the judge has done is essentially direct a verdict on the question of the time – the relation in time between two things. Even though I agree with you, Your Honor, it's obvious as heck, but still the jury has the right to do it, or the defendant has the right to have a jury pass on that. All right. I'll reserve 58 seconds. You may. Good morning, Your Honors. I'm Assistant United States Attorney Tracey Barter on behalf of the – excuse me – United States Attorney for the District of Arizona and the United States, which is the appellee in this case. The appellant's conviction and sentence should be affirmed for the following two reasons. First, the government met its burden of proof – excuse me – when it proved that the defendant or an appellant was found in the United States on or about March 4, 2004, and two, the chronological sequence of two known dates – in this case, the date of deportation, which was proven to the jury, and the date of the prior conviction, which was evident from the face of the conviction document. The issue of the chronological order of those two dates is not a proper matter to be submitted to the jury. With regard to the found in on March 4, this Court has never held that there are two elements to being found, that is, being physically encountered by immigration officials and having the full knowledge of the individual's status or lack of legal status in the United States. In United States v. Jimenez Borja, which is unfortunately not cited in our brief, but it is 378 F. 3rd. 853, and that's a Ninth Circuit case from 2004, this Court upheld a conviction and sentence under this very same statute, 8 U.S.C. 1326, and also found that a deported alien was found by the local police. In that case, the defendant was found by California Highway patrol officers and was eventually convicted on certain state charges. He was later, prior to his release from prison, interviewed by an INS agent in the prison, and then at that time, the INS became aware that he was an illegal alien and that he was a felon. The defendant in that case tried to challenge the found in because the federal indictment charge that he was found on the date he was arrested by state officials, and this Court upheld that and found that that was satisfactory, and that indictment was upheld. And so implicit in that holding is that it is not required that the INS have a full understanding of the defendant's status to qualify as being found in the United States. In that case, did somehow the immigration authorities find out that this man was in custody and then visit him? Unfortunately, Your Honor, it's not stated in the opinion one way or another how the INS was alerted, at that time the INS was alerted, to his presence. So unfortunately, it's not addressed in that case, and I have a suspicion of how it happened because when aliens are released from state prison, if they're aliens, they alert the INS. Did the evidence show that the California Highway Patrol officers did not know his status? Again, unfortunately, it doesn't address that, and there was no discussion of how he was turned over to the INS. Even if this Court were to go forward and to hold that there is this sort of two-element aspect to being found in, the indictment charges on or about March 4th. And in this case, the defendant presented himself to the immigration officials on March 4th, 2004, under his true name, and so the immigration officials knew he was here. And on March 11th, 2004, which was only a week later, the criminal complaint was filed in the District Court of Arizona, charging the appellant with a violation of 8 U.S.C. 1326, and an arrest warrant was issued on that date, and those are docket numbers one and two, which is part of the excerpt of record. So clearly, at least by March 11th, only a week after physically discovering the defendant, the immigration officials were aware that he was an illegal alien because they had to provide an affidavit supporting probable cause to issue an arrest warrant. That arrest warrant was signed by the magistrate, Judge Sitver, and that is the arrest warrant under which the defendant was eventually arrested on May 21st. Is my memory right or wrong that when he presented himself on March 4th, that some kind of a red flag came up? You're right, Your Honor. Even though the other stuff that your opposing counsel describes, in fact, appears to have happened. Wasn't there a red flag raised at the time he presented himself? That's right, Your Honor. Patricia Wilson, the immigration and customs employee who processed the defendant's application, testified in excerpts of record pages 32 and 33 that when she inputted his name, an IBIS hit came up, is what it's called, and it's a red flag that indicates that there is something awry with an individual's status. And that is turned over to the investigator within the ICE organization to confirm whether  was turned away on that date and asked to return on March 11th after they could have some time to follow up. He did not return. Excuse me. He was asked to return on March 10th. He did not return, and that's when the criminal complaint was filed. He was not arrested until May 21st, but the testimony in the record does not support the suggestion that they didn't know that this individual was an illegal alien. Again, they had already filed a criminal complaint. It's a little bit vague, and unfortunately, we don't have as clear of testimony on this agent. Consolino testified that it took him some research, and he eventually found the defendant on May 21st, so it's unclear whether that means that he couldn't find him physically again because he had left the ICE facility or whether he was continuing to do follow-up work on his status, but clearly there was probable cause on March 11th, 2004. And then finally, to return to this, the argument about the chronological sequence, the sentencing judge, as has been frequently revisited by this circuit and also other circuits, Almendarez-Torres held that the fact of a prior conviction in the need not be presented to the jury. That has been repeatedly affirmed, that as the Apprendi rule, Almendarez-Torres specifically deals with this statute at issue 8 U.S.C. 1326 and the sentencing enhancements found for prior aggravated felony convictions. The language of the statute provides for sentencing enhancement when an alien's removal is subsequent to a conviction, and then sections B-1 provides for certain kinds of crimes and B-2 for aggravated felonies. In this case, Judge Martone, the sentencing judge, had to have found that the conviction, in this case the cocaine sale conviction, was a prior conviction because for purposes of sentencing enhancement, it must fall prior to the elements of the offense. So in this case, as Judge Martone noted, it is embedded in the fact of finding a prior conviction that the judge needs to take note of the date of the conviction, which is evident from the face of the conviction, and then whether or not that falls chronologically prior to the elements of the offense, the being found in or entering the United States. So in this case, Judge Martone, after he considered the date of November 21, 1995, which was the date of removal, which was proven to the jury beyond a reasonable doubt, he took the conviction document and made three findings, that this defendant was convicted, the date of this defendant's conviction, and the nature of the conviction when he provided the sentencing enhancement. To ask now the jury to turn around with a 1995 date and a 1992 date and ask the jury to determine the chronological order simply makes no sense. The judge is perfectly equipped to take judicial notice of the chronological order of two known dates and is permitted to do so under this Court's and the Supreme Court's rulings on this issue. If the panel has no further questions, then I will. Thank you. Your Honor, I'd just like to point out that the criminal complaint was not presented to the jury, and what the government is asking the court to do is go outside the record of matters presented to the jury. The criminal complaint was not presented in evidence. It's something that's in the file, yes, but as far as this jury knew and the evidence presented, the only evidence was that he was found and arrested on way after March 4th. So we would object to any consideration of items not presented to the jury because that's going outside the record. If I have any questions in 26 seconds, I'd be happy to answer them. Thank you. Thank you. It appears not. I thank both counsel for your argument. The case is submitted. The next case for argument is United States v. Moreno-Grena.
judges: Alarcon, McKeown, Holland